IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AARON YOUNG, :

Plaintiff, :

v. : Civil Action No. GLR-14-3626

SETH SWIRSKY, :

Defendant. :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant's, Seth Swirsky, Motion to Dismiss Plaintiff's, Aaron Young, Amended Complaint (ECF No. 12) and Young's Motion for Leave to File Surreply (ECF No. 22). This case involves the sale of a circa 1930s New York Yankees jersey worn by baseball legend Lou Gehrig. Principally at issue is (1) whether the Court can assert personal jurisdiction over Swirsky, and (2) whether Young's claims are time-barred by the statute of limitations. The Court, having reviewed the Motions and supporting documents, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014).

The Court will grant Young's Motion for Leave to File Surreply because in his reply memorandum, Swirsky introduced a new issue requiring a response. The Court will also grant in part and deny in part Swirsky's Motion to Dismiss. Not only can the Court exercise specific personal jurisdiction over Swirsky, but also his common law causes of action are not time-barred by Maryland's statute of limitations. Because the Court is sitting in diversity,

however, it will dismiss Young's claims for violations of California law.

## I. BACKGROUND[1]

Swirsky resides in California, and Young resides in Maryland. Swirsky owned a circa 1930s New York Yankees jersey worn by baseball legend Lou Gehrig (the "Jersey"). At some point, Swirsky became interested in selling the Jersey and contacted Young about the possibility of purchasing it. Around the same time, Swirsky arranged for Greg Manning Auctions, Inc. ("Greg Manning") to facilitate the sale.

In the summer of 1998, Swirsky and Young began more serious discussions about the sale of the Jersey. In mid-to-late 1998, Swirsky traveled to Maryland to meet with Young in person. During their meeting, they agreed that Swirsky would sell the Jersey to Young through Greg Manning, the sale of the Jersey would be contingent upon Swirsky providing an updated letter of authentication, and they would finalize the price at a later date.

After their meeting in Maryland, Swirsky and Young reconvened at a convention in Illinois, ultimately agreeing to a price of $85,000. Young purchased the Jersey on March 12, 1999, and Swirsky provided some number of authentication letters that were not up-to-date. Approximately two weeks later, on March 25, 1999, Swirsky

---

[1] Unless otherwise noted, the following facts are taken from the Amended Complaint (ECF No. 3) and are assumed true and viewed in a light most favorable to Young. See Mylan Labs., Inc. v.

provided an updated letter of authentication (the "March 25, 1999 Letter") by and through Grey Flannel, Inc. ("Grey Flannel"). The letter, however, did not identify the date on which the Grey Flannel experts inspected the Jersey.

In April 2013, fourteen years after purchasing the Jersey from Swirsky, Young met with baseball uniform and bat expert Dave Bushing. Bushing reviewed Young's entire personal collection of baseball memorabilia and upon inspecting the Jersey, raised several concerns over its authenticity. Young decided to further investigate these concerns. He contacted Grey Flannel and asked them to provide assurance that the March 25, 1999 Letter was legitimate. Grey Flannel inspected the Jersey and concluded that it "was in fact a counterfeit." (Am. Compl. ¶ 19, ECF No. 3). Accordingly, Grey Flannel withdrew the March 25, 1999 Letter.

Also, in the spring of 2013, Heritage Auctions ("Heritage") contacted Young about consigning the Jersey. But, when Heritage inspected the Jersey, they identified several issues concerning its authenticity and returned it to Young.

Young then contacted Swirsky in July 2013 to alert him of the authenticity concerns raised by Bushing, Grey Flannel, and Heritage. Young requested that Swirsky provide further assurances of the Jersey's authenticity, including information regarding the previous owners of the Jersey and the methods of procurement for

---

Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

the authenticity letters that Swirsky provided at the time of sale. Swirsky did not provide this information.

On November 18, 2014, Young filed suit against Swirsky in this Court. (ECF No. 1). Young amended his Complaint on February 5, 2015, asserting the following causes of action: violation of California Civil Code § 1739.7 (West 2015) (Count I); violation of California Business and Professions Code § 17200 (West 2015) (Count II); negligent misrepresentation (Count III); breach of contract (Count IV); and breach of express warranty (Count V). (ECF No. 3). On April 27, 2015, Swirsky filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (ECF No. 12). Young filed his Opposition to Defendant's Motion to Dismiss on May 26, 2015 (ECF No. 15), and Swirsky filed his Response to Plaintiff's Opposition on July 14, 2015 (ECF No. 20). On July 24, 2015, Young also filed a Motion for Leave to File Brief Surreply to Defendant's Response, to which he attached his proposed Surreply. (ECF No. 22). Swirsky then responded on July 29, 2015 (ECF No. 23), and Young replied on August 5, 2015 (ECF No. 24).

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. When a non-resident defendant challenges a court's power to exercise jurisdiction, "the jurisdictional question is to be resolved by the judge, with the

burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). "Yet when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction." Mylan Labs., 2 F.3d at 60 (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). In determining whether the plaintiff has proved a prima facie case of personal jurisdiction, the Court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Id. (citing Combs, 886 F.2d at 676). Additionally, a court is permitted to consider evidence outside the pleadings when resolving a Rule 12(b)(2) motion. Structural Pres. Sys., LLC v. Andrews, 931 F.Supp.2d 667, 671 (D.Md. 2013) (citing Silo Point II LLC v. Suffolk Const. Co., 578 F.Supp.2d 807, 809 (D.Md. 2008)).

Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, the complaint must allege enough facts to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual

content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555).

Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)). And in doing so, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Furthermore, unlike with a Rule 12(b)(2) motion, when resolving a 12(b)(6) motion, a court ordinarily may not consider matters that are outside the complaint or not expressly incorporated therein. Murphy-Taylor v. Hofmann, 968 F.Supp.2d 693, 710 (D.Md. 2013) (quoting Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013)).

**B. Motion for Leave to File Surreply**

The Court will grant Young's Motion for Leave to File Surreply because Swirsky introduced new information in his Response to

Plaintiff's Opposition that Young previously did not have an opportunity to address.

"Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D.Md. 2014). Typically, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003) (citing Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001)). As the Court will discuss infra, whether Swirsky worked through an agent and what, if any, tasks his agent performed in Maryland are critical to whether the Court can exercise personal jurisdiction over Swirsky. In his Response to Plaintiff's Opposition, Swirsky—for the first time—discussed the involvement of Les Wolff in the sales transaction. Swirsky quoted from Wolff's affidavit, which he attached to his reply memorandum, to argue Wolff was the broker who assisted Swirsky in facilitating the transaction and neither Wolff nor Swirsky traveled to Maryland to solicit or negotiate with Young. (See Def.'s Resp. Pl.'s Opp'n at 12, ECF No. 20).

Because Young would be unable to contest matters presented to the court for the first time in Swirsky's Reply, the Court will grant Young's Motion for Leave to File Surreply. The Court has considered Young's Surreply (ECF No. 22-1) when deciding how to rule on Swirsky's Motion to Dismiss.

**C. Motion to Dismiss for Lack of Personal Jurisdiction**

The Court will deny Swirsky's Motion to Dismiss on personal jurisdiction grounds because Maryland's long-arm statue authorizes personal jurisdiction over Swirsky and Young has proved a prima facie case of specific jurisdiction.

A federal district court may only exercise personal jurisdiction over a nonresident defendant when such exercise (1) is authorized under the state's long-arm statute and (2) comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. Carefirst, 334 F.3d at 396 (citing Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). Because Maryland's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution, Mohamed v. Michael, 370 A.2d 551, 553 (Md. 1977), the Court's statutory inquiry merges with its constitutional inquiry, Carefirst, 334 F.3d at 396. The Court, however, must still address both elements in the personal jurisdiction analysis. See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc., 888 F.Supp.2d 691, 698 (D.Md. 2012) (citing Dring v. Sullivan, 423 F.Supp.2d 540, 545 (D.Md. 2006)).

Before reviewing whether exercising personal jurisdiction over Swirsky is authorized under Maryland's long-arm statute and comports with due process, the Court must ascertain which factual assertions it will consider. Both parties submit affidavits and

declarations discussing the details of the Jersey sale. These sworn statements, however, are completely contradictory with respect to two key issues: (1) the level and location of the contact that Swirsky and Young had before finalizing the sale; and (2) with whom Swirsky worked to broker the sales transaction and how much contact this broker had with Young in Maryland. The Court need not resolve these contradictions, however, because it must resolve all factual disputes in Young's favor. Mylan Labs., 2 F.3d at 60 (citing Combs, 886 F.2d at 676). Therefore, when determining whether Young has proved a prima facie case of personal jurisdiction, the Court will rely solely on the affidavits attached to Young's Opposition to Defendant's Motion to Dismiss and his Surreply (ECF Nos. 15-1, 15-2, 22-4, 22-5).

**1. Maryland Long-Arm Statute**

Maryland's long-arm statute provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person, who directly or by an agent . . . [c]auses tortious injury in the State by an act or omission in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103 (West 2015). Here, Young alleges he suffered tortious injury in Maryland resulting from Swirsky's negligent misrepresentation concerning the authenticity of the Jersey. According to the Amended Complaint, as well as Young's and Hughes's affidavits, when Swirsky met with Young in Maryland, he did not disclose that the Jersey was, or might be, inauthentic. (ECF Nos.

3, 15-1, 15-2, 22-4, 22-5). Because the failure to disclose this material information is an omission that occurred in Maryland, the Court finds Maryland's long-arm statute authorizes personal jurisdiction over Swirsky.

**2. Due Process**

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" Carefirst, 334 F.3d at 397 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). To satisfy the minimum contacts test, the plaintiff must "show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities.'" Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (alteration in original) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

There are two types of personal jurisdiction: general and specific. With general jurisdiction, the defendant's contacts with the state are not the basis for the suit and the "jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state." Carefirst, 334 F.3d at 397. Conversely, with specific jurisdiction, the

defendant's contacts form the basis of the suit. Id. Here, Young's suit arises from the alleged activities that Swirsky and his agent conducted in Maryland. Thus, the Court must determine whether Young has proved a prima facie case of specific jurisdiction. See Mylan Labs., 2 F.3d at 60 (citing Combs, 886 F.2d at 676).

The United States Court of Appeals for the Fourth Circuit has developed a three-prong test for specific jurisdiction in which "we consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs, 561 F.3d at 278 (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)).

"The first prong articulates the minimum contacts requirement of constitutional due process[.]" Id. In seeking to resolve whether Swirsky's contacts with Maryland satisfy this prong, the Court may consider whether Swirsky or his agent reached into Maryland to solicit or initiate business and whether Swirsky or his agent made in-person contact with Young in Maryland regarding their business relationship. See id. (discussing the non-exclusive factors a court may consider when evaluating the first prong of the specific jurisdiction test in a business context); Nucor Corp. v.

Bell, 482 F.Supp.2d 714, 722 (D.S.C. 2007) ("The contacts within the forum of a party's agent . . . may, in appropriate circumstances, be attributed to the party for purposes of establishing jurisdiction." (citing Rush v. Savchuk, 444 U.S. 320, 332 (1980))). In the context of establishing personal jurisdiction, an employee is an agent of his employer. Id. ("[Employee] was acting as [employer's] agent such that [employee's] contacts with the forum state are attributable to [employer] itself.").

When "determining whether prior business negotiations in the forum state give rise to specific jurisdiction, the 'strongest factor' is 'whether the defendant initiated the business relationship in some way.'" Giannaris v. Cheng, 219 F.Supp.2d 687, 692 (D.Md. 2002) (quoting Nueva Eng'g, Inc. v. Accurate Electronics, Inc., 628 F.Supp. 953, 955 (D.Md. 1986)). A single instance of negotiations in the forum state may give rise to specific jurisdiction. See Carefirst, 334 F.3d at 397 ("Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." (citing Nichols v. G.D. Searle & Co., 783 F.Supp. 233, 238 (D.Md. 1992), aff'd, 991 F.2d 1195 (4th Cir. 1993))).

Here, Swirsky initiated the business relationship with Young by meeting with him in Pikesville to negotiate the terms of the

Jersey sale. (Young Aff. ¶ 8, ECF No. 15-1). When doing so, he "reached into the forum state to solicit or initiate business" and "made in person contact with [Young] in [Maryland] regarding the business relationship." Consulting Eng'rs, 561 F.3d at 278. This single contact in Maryland gave rise to Young's causes of action because not only did Young and Swirsky agree on some of the final terms of the sale, but also Swirsky did not disclose any authenticity concerns.

Moreover, Swirsky's contact with Maryland did not end with his meeting in Pikesville. Swirsky also reached into Maryland to solicit and initiate business through his agent—Bill Hughes. In his affidavit, Hughes states that Swirsky "employed" him to broker the transaction. (Hughes Aff. ¶ 7, ECF No. 15-2). Hughes, as Swirsky's agent, solicited Young about purchasing the Jersey, arranged for Young and Swirsky to meet in Pikesville and personally attended the meeting to memorialize any terms of the sale, and met with Young on at least two other occasions in Maryland to discuss the sale. (Id. ¶¶ 8—13).

In sum, Swirsky's personal contact with Maryland and his contact through Hughes, his agent, demonstrate that Swirsky "purposefully availed [him]self of the privilege of conducting activities in the State[.]" Consulting Eng'rs, 561 F.3d at 278 (quoting ALS Scan, 293 F.3d at 712).

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." Id. at 278–79. This prong is satisfied because Swirsky's contact with Young in Maryland, both personally and through his agent Hughes, form the basis of Young's suit.

"The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the forum[.]" Id. at 279. These factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id.

As for the interest of the forum state, "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Chartier v. M. Richard Epps, P.C., No. ELH-14-1071, 2014 WL 4748629, at *11 (D.Md. Sept. 23, 2014) (alteration in original) (quoting Burger King, 471 U.S. at 474). As such, Maryland has a manifest interest in the adjudication of this matter. Moreover,

Young's interest in obtaining convenient and effective relief outweighs the potential inconvenience to Swirsky.

Thus, having determined that the Fourth Circuit's three-prong test is satisfied, the Court concludes Young has proven a prima facie case of specific jurisdiction.

### D. Motion to Dismiss for Failure to State a Claim

#### 1. Statutory Causes of Action (Counts I and II)

The Court will grant Swirsky's Motion to Dismiss with respect to Counts I and II because the Court is sitting in diversity and must apply Maryland substantive law.

Paradoxically, after arguing Swirsky's contacts with Maryland were sufficient for personal jurisdiction in this Court, alleging that numerous events in Maryland led to the final sale of the Jersey, and arguing that Maryland common law should apply to Counts III–V, Young asserts causes of action under California statutory law. Specifically, he alleges Swirsky violated California Civil Code § 1739.7 (West 2015) (Count I) and California Business and Professions Code § 17200 (West 2015) (Count II). Young's statutory causes of action must be dismissed for at least two reasons.

First, "[a] federal court sitting in diversity must apply the substantive law of the state in which the cause of action arose." Nationwide Mut. Ins. Co. v. Welker, 792 F.Supp. 433, 437 (D.Md. 1992) (emphasis added) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). This "substantive law" includes the law of the

state legislature. See id. (concluding that court must "apply the law of Maryland as it has been established by the Maryland state courts and legislature." (citing Wilson v. Fraser, 353 F.Supp. 1 (D.Md. 1973))); see also Cilento v. B. T. Credit Co., 424 F.Supp. 1, 1 (D.Md. 1977) (applying Maryland statutory law when district court was sitting in diversity).

Young's causes of action arose in Maryland. When Young and Swirsky met in Pikesville, they finalized many of the final terms of the Jersey sale including that Swirsky would sell it through Greg Manning and the sale was contingent upon Swirsky providing an updated letter of authentication. Furthermore, Young alleges that the "ultimate disposition of the [Jersey] occurred in [Maryland]," as did the "events giving rise to the subject claims." (Am. Compl. ¶ 4).

Second, "[i]n a diversity case a federal court must follow the conflict of laws rules prevailing in the state in which it sits." Harvard v. Perdue Farms, Inc., 403 F.Supp.2d 462, 466 (D.Md. 2005)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). In cases sounding in tort, Maryland applies the maxim of lex loci delicti—the law of the place of the harm—to determine the applicable substantive law. Id.; see Hauch v. Connor, 453 A.2d 1207, 1210 (Md. 1983) (rejecting the application of Maryland's statute because the harm related to the underlying tort occurred in Delaware).

Young's suit sounds in tort because the gravamen of his Amended Complaint is that Swirsky misrepresented the authenticity of the Jersey. Indeed, even his claims for violations of California statutory law are based on Swirsky's misrepresentations. (See Am. Compl. ¶¶ 28–35).

Accordingly, because Young's causes of action arose in Maryland, as did the harm resulting from the tortious conduct, the Court must apply Maryland substantive law and will dismiss Counts I and II.

**2. Common Law Causes of Action (Counts III–V)**

The Court will deny Swirsky's Motion to Dismiss with respect to Counts III through V because they are not barred by Maryland's statute of limitations.

Young asserts common law causes of action for negligent misrepresentation (Count III), breach of contract (Count IV), and breach of express warranty (Count V). Swirsky argues these claims are barred by Maryland's statute of limitations because Young's allegations demonstrate that he observed a "red flag" in 1999 that put him on notice of the nature and cause of his injury: the March 25, 1999 Letter did not identify an inspection date. (See Am. Compl. ¶ 15). The Court is not persuaded.

The statute of limitations for Young's negligent misrepresentation claim is three years, Md. Code Ann., Cts. & Jud. Proc. ("CJP"), § 5-101 (West 2015), and the statute of limitations

for his breach of contract and breach of warranty claims is four years, Md. Code Ann., Com. Law ("CL"), § 2-725 (West 2015). These limitations periods commence when the causes of action "accrue." CJP § 5-101; CL § 2-725. Pursuant to Maryland's "discovery rule," civil causes of action "accrue" when "the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." Windesheim v. Larocca, 116 A.3d 954, 962–63 (Md. 2015) (quoting Frederick Rd. Ltd. P'ship v. Brown & Sturm, 756 A.2d 963, 973 (Md. 2000)).

"Before an action can accrue under the discovery rule, 'a plaintiff must have notice of the nature and cause of his or her injury.'" Id. (quoting Frederick Rd., 756 A.2d at 973). One type of notice that will trigger the running of the statute of limitations under the discovery rule is "implied notice." Also known as "inquiry notice," implied notice "is notice implied from 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.'" Id. (quoting Poffenberger v. Risser, 431 A.2d 677, 681 (Md. 1981)).

At this juncture of the litigation, it would be inappropriate for the Court to determine whether Young was on inquiry notice on March 25, 1999. The question of when a plaintiff is on notice of his causes of action for purposes of a statute of limitations

defense is a question of fact to be decided by a jury. O'Hara v. Kovens, 503 A.2d 1313, 1320 (Md. 1986) ("[W]hether or not the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by the exercise of due diligence, is ordinarily a question of fact for the jury."); see Frederick Rd., 756 A.2d at 974 ("[T]he question of notice generally requires the balancing of factual issues and the assessment of the credibility or believability of the evidence[.]"). Here, it is unclear whether authenticity certificates for sports memorabilia typically include inspection dates and whether the absence of an inspection date would put a person of ordinary prudence on notice that something might be amiss. These are issues for a fact finder to resolve.

Young alleges he did not discover that the Jersey might not be authentic until 2013 when Dave Bushing, Grey Flannel, and Heritage all identified authenticity concerns. (Am. Compl. ¶¶ 18–20). Because the Court must accept these allegations as true and construe them in the light most favorable to Young, England v. Marriott Int'l, Inc., 764 F.Supp.2d 761, 769 (D.Md. 2011), and a question of fact exists as to when Young should have discovered the Jersey might not be authentic, the Court finds, at this stage of the litigation, that Young's common law causes of action are not barred by the statute of limitations. Thus, Swirsky's Motion to

Dismiss Young's common law causes of action will be denied without prejudice at this time.

**III. CONCLUSION**

For the foregoing reasons, Young's Motion for Leave to File Surreply (ECF No. 22) is GRANTED and Swirsky's Motion to Dismiss (ECF No. 12) is GRANTED in part and DENIED in part. Counts I and II are DISMISSED. A separate Order follows.

Entered this 26th day of October, 2015

/s/
_____________________________
George L. Russell, III
United States District Judge